IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| JEROME BRYANT #2079914 | § | |
| VS. | § | CIVIL ACTION NO. 6:22cv137 |
| OFFICER OLAYINKA M. PEDRO, et al. | § | |

<u>REPORT AND RECOMMENDATION</u>
<u>OF THE UNITED STATES MAGISTRTE JUDGE</u>

Plaintiff Jerome Bryant filed a *pro se* complaint under 28 U.S.C. § 1983 complaining of alleged violations of his constitutional rights as a prisoner in the Texas Department of Criminal Justice (TDCJ). The lawsuit was referred to the undersigned United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Before the Court is the motion by Defendants Cothran, Helmig, Pedro, and Velasquez, seeking summary judgment due to Plaintiff's failure to exhaust administrative remedies, in which Defendant Rogers joined on July 31, 2023. (Dkt. ##37, 50.) Plaintiff responded in opposition to the motion (Dkt. #40), and Defendants have filed a supplemental brief with additional evidence as requested by the Court. (Dkt. #46.) The motion for summary judgment is now ripe for review. For the reasons explained below, the undersigned recommends that the motion be granted and that summary judgment be entered in favor of Defendants.

**I. Plaintiff's Allegations**

Plaintiff alleges that Defendants Pedro, Rogers, Helmig, and Velasquez used excessive force against him while Defendant Cothran was present and permitted them to do so without intervening on August 4, 2021, in the Coffield Unit of the TDCJ. (Dkt. #1.) He alleges that Defendant Helmig beat him again on September 18, 2021, and that Pedro, Rogers, Helmig, and

Velasquez all beat him yet again on October 17, 2021. (*Id.*) Plaintiff asserts that he sustained injuries in each incident, including a broken eye socket in the October incident, which resulted in a trip to Palestine Hospital. (*Id.*) He seeks unspecified money damages and injunctive relief. (*Id.*)

**II. The Parties' Briefs and Evidence**

    A. Defendants' motion

Defendants assert that TDCJ has a 2-step grievance process to resolve issues relating to conditions, comprising a Step 1 grievance to prison officials and a Step 2 appeal. (Dkt. #37 at 2.) To prove that fact, they have filed the portion of the TDCJ's Offender Orientation Handbook that governs "Grievance Procedures for Offenders." (Dkt. #37-2 at 11.) They describe the process as follows:

> A Step 1 grievance, which is reviewed by officials at the inmate's assigned facility, must be filed within fifteen days of the alleged incident or challenged event. *See Johnson* [*v. Johnson*], 385 F.3d [503] at 515 [(5th Cir. 2004)]; Exhibit B at 10-12. Once an inmate receives a response to his Step 1 grievance, he then has up to fifteen days to file a Step 2 grievance to appeal an unfavorable result. Exhibit B at 10-12.

(Dkt. #37 at 5.)

Defendants further assert that Plaintiff failed to exhaust that grievance process with respect to any of the three assaults described in his complaint. (Dkt. #37 at 2, 5–6.) Specifically, they state that

> Bryant filed a Step 1 grievance on August 9, 2021 regarding the first alleged assault and his claims against Defendants. Exhibit A at 3-4. The August 9 grievance was assigned Grievance Number 2021146855. Exhibit A at 3. Bryant's grievance records from February 1, 2021, to May 1, 2022, show that Bryant did not file any other grievances regarding the alleged assaults, nor did Bryant file a Step 2 appeal for Grievance Number 2021146855. See Exhibit A.

(*Id.* at 2.)

With their supplemental brief filed at the instruction of the Court, Defendants submitted the affidavit of Tyra Phillips, a TDCJ employee in the Administrative Review and Risk

Management Division Inmate Grievance Program. (Dkt. #47.) All grievances submitted by Plaintiff between August 4, 2021, and February 4, 2022, are attached to the Phillips Affidavit. (Dkt. #46 at 2; Dkt. #47 at 9–111.) These records include the August 9, 2021 grievance referenced by Defendants—Grievance #202146855—about an alleged use of force on August 4. (Dkt. #47 at 9.) It was dated signed by Plaintiff on August 4. (*Id.* at 10.) The grievance investigator submitted a notice that an additional forty days was needed to respond to that grievance. (*Id.* at 77.) The Warden's response to the grievance, dated October 28, 2021, states as follows:

> There was a documented use of force in this incident. All reported uses of force are reviewed by designated use of force staff and will not be addressed through the grievance procedure. A copy of your allegations has been forwarded to the Region II Grievance office for coordination with the Office of the Inspecter General (OIG). Further investigation is at the discretion of the OIG.

(Dkt. #47 at 10.)

Plaintiff's next grievance was received on December 14, 2021, at the Robertson Unit. (Dkt. #47 at 78.) It complained about a delay in providing him with an I.D. (*Id.*) The remainder of the grievances in the record were submitted after Plaintiff was transferred to the Robertson Unit, and none of them concern the facts of this case. (*Id.* at 78–111.) The record does not contain any Step 2 appeal of the relevant grievance noted above or any grievances about the other alleged uses of force in the complaint.

Accordingly, Defendants assert that they are entitled to summary judgment due to Plaintiff's failure to exhaust administrative remedies as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a).

B. Plaintiff's response and further briefing

In his response, Plaintiff acknowledges that he did not exhaust his administrative remedies. (Dkt. #40.) He alleges, however, that he was unable to exhaust those remedies because of conditions imposed by prison officials:

> OK w/ the exhaustion of administrative remedies – Coffield Unit left me stuck on C.D.O./suicide watch the whole time I was going through this. Plus every time I got off they lost all my property. They were giving me no way to file a grievance! Matter of fact I had to wait in the (legal cage) on the P2 hall way on the coffield unit in order to hand my grievance that was turned in to the mail lady, personally! . . . So I'm saying the reason I was not able to exhaust all remedies was because Coffield Unit were all in it together! To keep me in duress and unable to do anything I needed to do. . . . They had me in duress which is why I couldn't finish my grievance process.

(Dkt. #40 at 1–2.)

Defendants addressed this argument in their supplemental brief requested by the Court. (Dkt. #46.) They submitted the affidavit of Chelsea Johnson, Manager II of Classification Operations-Classification Records for TDCJ. (Dkt. #46-1.) She testifies that, based upon the authenticated records attached to her affidavit, Plaintiff was housed in Constant Direct Observation (CDO) on August 17 and 18, 2021, from August 24 thru September 13, 2021, September 20 thru 22, 2021, October 10 thru 12, 2021, and October 15 thru 22, 2021. (Dkt. #46-1 at 2–3.) Between those dates, Plaintiff was either in non-CDO housing at Coffield or at the Skyview Unit for psychological evaluation. (*Id.*) Johnson testifies that TDCJ policy provides that inmates on CDO due to suicide risk "will be allowed to keep clothing, blanket, mattress, and legal material, unless specifically ordered otherwise by the medical provider." (*Id.* at 3.) Plaintiff left Coffield for good on October 29, 2021 and arrived at his new assignment to the Robertson Unit on November 3, 2021. (*Id.*)

The Phillips Affidavit submitted by Defendants also provides information relevant to Plaintiff's claimed inability to exhaust his administrative remedies. Specifically, she testifies that grievance drop boxes in the Coffield Unit "are located at the G-Wing 1-Row, T1 – outside of the crash gate for both sides of the General Population wings, T3 & T4 at the rotunda, T6-Dorms in the dining hall, and at the Trusty Camp in the dining hall." (Dkt. #47 at 2.) She further testifies that:

> If any of the inmates need assistance filing a grievance housed at the Robertson or Coffield Unit between August 4, 2021, through February 4, 2022, per policy, accommodations were available to ensure that any inmate who is impaired, disabled, or not an English or Spanish speaker or is in CDO to ensure the inmate has an adequate opportunity to access the inmate grievance process. Some accommodations include staff members assisting inmates in writing grievances, and additional time to file a grievance if the inmate is in a free-world hospital or cognitively impaired in a way that would prevent him from requesting assistance.

(*Id.* at 3.)

### III. Legal Standards

A motion for summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). The Supreme Court has interpreted the plain language of Rule 56 as mandating "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." *Little v. Liquid*

*Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*) (quoting *Celotex*, 477 U.S. at 323–25). A fact is material if it might affect the outcome of the suit under the governing law. *Merritt-Campbell, Inc. v. RxP Prods., Inc.*, 164 F.3d 957, 961 (5th Cir. 1999). Issues of material fact are "genuine" only if they require resolution by a trier of fact and if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Merritt-Campbell, Inc.*, 164 F.3d at 961. If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Little*, 37 F.3d at 1075.

If the movant meets this burden, Rule 56 requires the opposing party to go beyond the pleadings and to show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. *EEOC v. Texas Instruments, Inc.*, 100 F.3d 1173, 1180 (5th Cir. 1996); *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1046–47 (5th Cir. 1996). The nonmovant's burden may not be satisfied by argument, conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a mere scintilla of evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 585 (1986); *Wallace*, 80 F.3d at 1047; *Little*, 37 F.3d at 1075.

When ruling on a motion for summary judgment, the Court is required to view all justifiable inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970); *Merritt-Campbell, Inc.*, 164 F.3d at 961. However, the Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *as modified*, 70 F.3d 26 (5th Cir. 1995). Unless there is sufficient evidence for a reasonable jury to return a verdict in the opposing

party's favor, there is no genuine issue for trial, and summary judgment must be granted. *Celotex*, 477 U.S. at 322–23; *Anderson*, 477 U.S. at 249–51; *Texas Instruments*, 100 F.3d at 1179.

**IV. Discussion and Analysis**

Congress enacted the PLRA in 1996, mandating that no action shall be brought by a prisoner "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). It is well-settled that inmates must exhaust any and all administrative remedies before proceeding in federal court. *See Gonzalez v. Seal*, 702 F.3d 785, 787 (5th Cir. 2012) (explaining that pre-filing exhaustion is both mandatory and non-discretionary). The purpose of the prison exhaustion requirement is to "provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit." *See Bisby v. Garza*, 342 F. App'x 969, 971 (5th Cir. 2009); *see also Patterson v. Stanley*, 547 F. App'x 510, 511 (5th Cir. 2013) (explaining that the primary purpose of a grievance is to give prison officials fair opportunity to address the problem that will later form the basis of the lawsuit); *Johnson v. Johnson*, 385 F.3d 503, 516 (5th Cir. 2004) (interpreting the exhaustion requirement in light of its purposes, which "include the goal of giving officials time and opportunity to address complaints internally.") (internal quotations and citation omitted).

The exhaustion provision was unanimously upheld by the Supreme Court in *Booth v. Churner*, 532 U.S. 731 (2001). The Supreme Court subsequently held that exhaustion is mandatory and that the requirement will not be excused when an inmate fails to properly exhaust his administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). Proper exhaustion means that an inmate must not only pursue all available avenues of relief but must also comply with all administrative deadlines and procedural rules. *Id.* at 90–91. The Fifth Circuit recently reiterated the principle that "[p]re-filing exhaustion is mandatory, and the case must be dismissed if available

administrative remedies were not exhausted." *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012). The Supreme Court elaborated further about the exhaustion requirement in *Jones v. Bock*, 549 U.S. 199 (2007). The Court explained that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Id.* at 211. The Fifth Circuit has explained the procedures to be followed with regard to claims of failure to exhaust:

> As a final matter, we now provide a brief summary of how district courts should approach exhaustion questions under the PLRA. When the defendant raises exhaustion as an affirmative defense, the judge should usually resolve disputes concerning exhaustion prior to allowing the case to proceed on the merits. If the plaintiff survives summary judgment on exhaustion, the judge may resolve disputed facts concerning exhaustion, holding an evidentiary hearing if necessary.

*Dillon v. Rogers*, 596 F.3d 260, 272–73 (5th Cir. 2010). A prisoner's failure to exhaust certain claims before filing suit in federal court is fatal to those unexhausted claims only. *See Jones*, 549 U.S. at 924 ("There is no reason failure to exhaust on one [claim] necessarily affects any other.").

The evidence submitted by Defendants establishes that Plaintiff failed to comply with that requirement. Plaintiff submitted a single relevant initial grievance that he failed to appeal through any of the higher channels available. He did not file any grievances about the other two incidents of excessive force alleged in his complaint.

Plaintiff does not contest that point but attempts to persuade the Court that he should not be held to the exhaustion requirement because conditions beyond his control made it impossible for him to pursue exhaustion. Exhaustion is not required when a remedies procedure is not available, such as when it is "a simple dead end," when it is too confusing for an ordinary prisoner to navigate it, or when administrators "thwart" inmates from using the process *See Ross v. Blake*, 578 U.S. 632, 643–44 (2016). But the evidence presented by Defendants establishes that being on CDO did not necessarily prevent Plaintiff from pursuing a grievance, as he maintains. And even *if* Plaintiff found it too challenging to submit a grievance from CDO, there was ample time between

his CDO assignments for him to grieve each incident. And he was transferred to another unit within days of the return of the single Step 1 grievance he submitted, and he offers no explanation for his failure to appeal that grievance from the Robertson Unit.

Plaintiff acknowledges that he failed to exhaust his administrative remedies and fails to establish that such remedies were unavailable to him. Accordingly, Section 1997e requires dismissal of this action, and Defendants are entitled to summary judgment.

## RECOMMENDATION

Accordingly, the undersigned recommends that Defendants' motion for summary judgment (Dkt. ##37, 50) be **GRANTED.** Plaintiff's claims should be **DISMISSED** without prejudice for failure to exhaust administrative remedies.

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report. A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

So ORDERED and SIGNED this 2nd day of August, 2023.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE